**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MOAEC TECHNOLOGIES, LLC, <br><br><br> Plaintiffs, <br><br> v. <br><br> SPOTIFY AB, and SPOTIFY USA, Inc., <br><br> Defendants. | C.A. No.: 18-cv-377-LPS-CJB <br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF MOAEC TECHNOLOGIES, LLC'S**
**OPPOSITION TO SPOTIFY USA'S MOTION TO DISMISS**

Dated: May 24, 2018

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (301) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Leonard A. Gail (admitted *pro hac vice*)
Kenneth M. Goldman (admitted *pro hac vice*)
**Massey & Gail LLP**
50 East Washington Street, Suite 400
Chicago, IL 60602
Telephone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com
kgoldman@masseygail.com

Christopher L. May (admitted *pro hac vice*)
Jeremy G. Mallory (admitted *pro hac vice*)
**Massey & Gail LLP**
1325 G Street N.W., Suite 500
Washington, DC 20005
Telephone: (312) 283-1590
Fax: (312) 379-0467
cmay@masseygail.com
jmallory@masseygail.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ........................................................................... 1

II.  NATURE OF THE PROCEEDINGS.................................................................. 1

III.  STATEMENT OF FACTS ................................................................................. 2

IV.  THE LEGAL STANDARDS AT ISSUE ........................................................... 4

V.  ARGUMENT ..................................................................................................... 7

    A.  Spotify's Section 101 Motion Should Be Denied.................................... 7

        1.  Spotify's Section 101 Motion Is Premature At Best.................................... 7

        2.  The '539 Patent Claims Are Patent-Eligible Under *Alice* Step One.................................................................................. 9

        3.  The '539 Patent Claims Are Patent-Eligible Under *Alice* Step Two................................................................................. 12

    B.  Plaintiff's Complaint Is Sufficient Under *Iqbal/Twombly*................... 15

        1.  The Complaint Sufficiently Connects The Patent's Limitations To Accused Products.............................................. 15

        2.  The Complaint Sufficiently Pleads Willfulness........................................ 17

        3.  The Complaint Sufficiently Pleads Induced Infringement ...................... 18

        4.  The Complaint Sufficiently Pleads Contributory Infringement............... 19

VI.  CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)......................................................................... 6, 9, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ........................................................................................ passim

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
   2018 WL 620968 (D. Del. Jan. 30, 2018) ................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ passim

*BASCOM Global Internet Svcs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)......................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 1, 4, 15, 16

*Berkheimer v. HP, Inc.*,
   881 F.3d 1360 (Fed Cir. 2018)............................................................................ 5, 6

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
   2017 WL 74729 (S.D.N.Y. Jan. 4, 2017)............................................................... 17

*Bohus v. Restaurant.com, Inc.*,
   784 F.3d 918 (3d Cir. 2015).................................................................................... 4

*Content Extraction and Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014)............................................................................. 14

*Continental Circuits LLC v. Intel Corp.*,
   2017 WL 2651709 (D. Ariz. June 19, 2017) ......................................................... 18

*Cronos Techs., LLC v. Expedia, Inc.*,
   2015 WL 5234040 (D. Del. Sept. 8, 2015) .............................................................. 6

*DRG-Int'l, Inc. v. Bachem Americas, Inc.*,
   2016 WL 3460791 (C.D. Cal. Jan. 5, 2016) .......................................................... 19

*Electric Power Group v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016).............................................................................. 10

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................ 5, 10, 11, 12

*Execware, LLC v. BJ's Wholesale Club, Inc.*,
   2015 WL 5734434 (D. Del. Sept. 30, 2015) ........................................................ 6, 8

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ................................................................. 10, 11

*Finjan, Inc. v. Cisco Sys. Inc.*,
  2017 WL 2462423 (N.D. Cal. June 7, 2017) .................................................. 18

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 1015 (1989) ......................................................................................... 4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ......................................................................................... 19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ............................................................................... 17, 18

*In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ................................................................. 15, 19

*In re TLI Comm'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ........................................................................... 5

*Int'l Lic. Exchange of America, LLC v. ViaSat, Inc.*,
  C.A. No. 16-720-RGA (D. Del. May 19, 2017). ............................................. 16

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ....................................................................... 10

*Internet Patents Corp. v. Active Network Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ......................................................................... 8

*IP Comm'n Sol'ns, LLC v. Viber Media (USA) Inc.*,
  2017 WL 1312942 (D. Del. Apr. 5, 2017) ....................................................... 16

*JSDQ Mesh Techs. LLC v. Fluidmesh Networks LLC*,
  2016 WL 4639140 (D. Del. Sept. 6, 2016) ..................................................... 6, 7

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ....................................................................... 17

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ....................................................................... 17

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3rd Cir. 2000) ............................................................................. 4

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
  132 S. Ct. 1289 (2012) ..................................................................................... 13

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  2016 WL 5661981 (D. Del. Sept. 29, 2016) ................................................... 13

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...................................................................... 5, 7, 9

*MOAEC, Inc. v. Pandora Media, Inc.*,
    607 F. Supp. 2d 980 (W.D. Wis. 2009) ................................................................. 3

*MOAEC, Inc. v. Pandora Media, Inc.*,
    2008 WL 4500704 (W.D. Wis. Sept. 30, 2008)............................................ 3, 7, 8

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
    852 F. Supp. 2d 470 (D. Del. 2012) .................................................................... 19

*Phillips v. County of Allegheny*,
    515 F.3d 291 (3d Cir. 2002)................................................................................... 4

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) ........................................................................... 13

*SAP America, Inc., v. InvestPic, LLC*,
    2018 WL 2207254 (Fed. Cir. May 15, 2018) ........................................................ 7

*SCVNGR, Inc. v. DailyGobble. Inc.*,
    238 F. Supp. 3d 263 (D.R.I. 2017)....................................................................... 11

*SIPCO, LLC v. Streeline, Inc.*,
    230 F. Supp. 3d 351 (D. Del. 2017) .................................................................... 17

*Sound View Innovations, LLC v. Facebook Inc.*,
    204 F. Supp. 3d 655 (D. Del. 2016) ...................................................................... 3

*TriPlay, Inc. v. WhatsApp, Inc.*,
    2018 WL 1479027 (D. Del. Mar. 27, 2018) .......................................................... 4

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013).......................................................................... 6, 7

*Varian Med. Sys., Inc. v. Elekta AB*,
    2016 WL 3748772 (D. Del. Jul. 12, 2016) .......................................................... 18

*Water Techs. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988)............................................................................. 19

**Statutes**

35 U.S.C. § 1 .................................................................................................................. 1

35 U.S.C. §101 ........................................................................................................... 1, 4

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................. 1, 4

Fed. R. Evid. 201 ........................................................................................................... 3

## I.    SUMMARY OF ARGUMENT

Spotify USA, Inc. (hereafter "Spotify") has moved under Fed. R. Civ. P. 12(b)(6) to

dismiss MOAEC Technologies LLC's (hereafter "MOAEC") patent infringement complaint on

two grounds.  First, Spotify alleges that U.S. Patent No. 6,232,539 (hereafter "the '539 patent")

supposedly fails to claim patent-eligible subject matter pursuant to 35 U.S.C. § 101.  Second,

Spotify asserts that the complaint fails to plead facts sufficient to support direct, willful, induced,

or contributory infringement.  Both positions are mistaken.

In its patent-eligibility arguments, Spotify first ignores that issues of claim scope, claim

construction, and fact render a decision on a Section 101 motion improper at this stage.  Spotify

also impermissibly simplifies key claim elements and ignores others – all in an attempt to recast

the physical music organizer, entertainment center, and playback methods disclosed in the patent

as unpatentable abstract ideas under *Alice* step one.  Finally, Spotify ignores the complaint's

well-pleaded facts – facts that establish that the combination of elements in the patent's claims

was not well-understood, routine, or conventional under *Alice* step two.

Spotify's separate assertion that the complaint somehow fails to plead facts sufficient to

put it on notice under *Iqbal* and *Twombly* fares no better.  The complaint more than adequately

identifies the infringing systems, the specific claims those systems infringe, and the publicly

available information from Spotify demonstrating its infringement.  The complaint similarly

informs Spotify of, and makes the allegations necessary to, plead willfulness and indirect

infringement.

MOAEC respectfully requests that Spotify's motion to dismiss be denied.

## II.    NATURE OF THE PROCEEDINGS

This is an action for patent infringement under 35 U.S.C. § 1 *et seq*.  Plaintiff MOAEC

alleges that Spotify USA, Inc. and Spotify AB directly and indirectly infringe the '539 patent by

a complaint filed March 9, 2018.  MOAEC further alleges that both parties' infringement was

willful.  Spotify USA filed a motion to dismiss on May 2, 2018.  Spotify AB has yet to accept

service of the complaint.

## III.  STATEMENT OF FACTS

The application for the patent Spotify infringes was filed on June 17, 1998 -- almost 20

years ago – and issued by the United States Patent and Trademark Office on May 15, 2001, as

U.S. Patent No. 6,232,539.  Entitled "Music Organizer and Entertainment Center," the patent

claims a music organizer and entertainment center that enables customized playback with a

variety of predetermined categories typically given by a service provider:



'539 patent (Complaint for Patent Infringement, D.I. 1, Exh. A) at 1:67-2:3. As shown in Fig. 1,

"[t]he center 50 is a stand-alone unit powered by a household current using a conventional power

cord 52."  *Id*. at 4:39-41.  While the entertainment center can be a personal computer, *see id*. at

5:13-29 and Fig. 2, it can also be a custom-built unit.  *Id*. at 4:43-44. "The music organizer and

entertainment center provides a center having a microprocessor, sound card functions and high-

volume data storage and retrieval units for playing back music according to a variety of

predetermined categories."  *Id*. at 2:7-11; *see also* Ex Parte Reexamination Certificate, at 1:59-

65.  Music may be transferred into the center via CD-ROM, or compressed data may be

transferred by radio link, telephone link, or the Internet.  '539 patent at 7:32-35.  The music files

can be tagged "so that only a desired center can read the information, and hence, play the songs… This prevents copyright infringement and unauthorized playback of songs by other units that have not paid appropriate license fees for receiving the music." *Id*. at 7:6-24. "In addition, an ownership column 816 is provided that indicates whether the music data accompanying the title is present in the user's own database. If so, the entry says "yes," otherwise a "no" indication is provided to the column 816 next to the particular title." *Id*. at 14:2-13; *see also* D.I. 1 at ¶ 15.

In 2008, MOAEC, Inc. (Plaintiff's predecessor-in-interest) asserted the '539 patent against several defendants, including Napster and Pandora. *See MOAEC, Inc. v. Pandora Media, Inc. et al*., Case No. 07-cv-654-BBC (W.D. Wis.). In that litigation, the parties disputed, and the court construed, eight separate terms of the '539 patent, including the terms" storage device," "category flag," and "receiving the compressed data from a remote source over a network for download into the storage device." *See MOAEC, Inc. v. Pandora Media, Inc*., No. 07-cv-654-bbc, 2008 WL 4500704 (W.D. Wis. Sept. 30, 2008). Based on these constructions, the court found non-infringement. *MOAEC, Inc. v. Pandora Media, Inc*., 607 F. Supp. 2d 980 (W.D. Wis. 2009).

On November 6, 2015, Plaintiff requested *ex parte* reexamination of claims 1-3 and 6-18 of the '539 patent based on five pieces of prior art raised during the *Pandora* litigation. Reexam. Appl. Ser. No. 90/013,623, Request for Ex Parte Reexamination (hereafter, "Exh. 1"), pp. 1-3.[1] These claims entered reexamination on December 1, 2015. *Id.*, Order Granting Ex Parte Reexamination, Exh. 1, pp. 4-15. During the reexamination, claims 1 and 15 of the '539 patent

---

[1] Selected portions of Reexam. Appl. Ser. No. 09/013,623 are attached to this brief as Exh. 1. The Court may take judicial notice of the reexamination and prosecution history of the '539 patent under Fed. R. Evid. 201. *Sound View Innovations, LLC v. Facebook Inc*., 204 F. Supp. 3d 655, 658-59 (D. Del. 2016) (collecting cases).

were amended and new claims 19-24 were added.  The United States Patent and Trademark Office ultimately found those claims patentable over the prior art (*see* Exh. 1, pp. 16-20), and on October 11, 2016 issued a reexamination certificate.  (*See* D.I. 1, Exh. A).

On October 19, 2016, Plaintiff MOAEC notified Spotify that it was infringing the '539 patent.  (*Id.*, ¶ 38).  Spotify failed to respond.  On March 9, 2018, MOAEC filed this action.

## IV.   THE LEGAL STANDARDS AT ISSUE

*Rule 12(b)(6)*.  Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is well settled that the complaint need not provide "detailed factual allegations," but rather only "the grounds of [a plaintiff's] entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The court will "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving part[y], the Plaintiffs." *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921 n.1 (3d Cir. 2015).  The court determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 291, 295 (3d Cir. 2002) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  The issue at the motion to dismiss stage is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer (and to discover) evidence to support the claims. *TriPlay, Inc. v. WhatsApp, Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *3 (D. Del. Mar. 27, 2018) (*citing Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3rd Cir. 2000); *Bell Atl. Corp. v. Twombly*, 550 US 544, 558 (2007).

*Patentable Subject Matter*.  A patent may be obtained for "any new and useful process, machine, manufacture or composition thereof."  35 U.S.C. § 101.  Courts perform a two-step

analysis to determine whether a patent is directed to eligible subject matter based on underlying facts. *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1365 (Fed Cir. 2018).

In step one, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept" – i.e., a law of nature, natural phenomenon, or abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). "The 'directed-to' inquiry applies a [] filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). In performing the step one analysis, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (citing *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (internal quotations omitted)). If the concept is patent-eligible under step one, the analysis is at an end. *Enfish*, 822 F.3d at 1339.

Even if the claims are found to be directed to a patent-ineligible concept at step one, they may be patentable under step two, if the court finds the claim elements, either individually or as an ordered combination, involve more than the previously well-understood, routine and conventional industry activities. *Alice,* 134 S. Ct. at 2359. Of particular relevance to Spotify's motion, "whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of ***fact***." *Berkheimer*, 881 F.3d at 1368 (emphasis added). "Whether a particular technology is well-understood, routine and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine

and conventional." *Id.* at 1368; *see also Aatrix Software, Inc. v. Green Shades, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018).

Where, as here, plaintiff asserts multiple claims, the defendant must either meet this burden for every asserted claim, or establish that one or more of the claims is representative of the rest. *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335, 1340 (Fed. Cir. 2013); *JSDQ Mesh Techs. LLC v. Fluidmesh Networks LLC*, No. 16-cv-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016) (collecting cases).   In particular, several factors determine whether a Rule 12 motion challenging patent eligibility for multiple claims is appropriately based on the analysis of a single claim:

> First, are all non-representative claims adequately represented by the representative claim (i.e., do *all* of the challenged claims relate to the *same* abstract idea and do any of the non-representative claims add one or more inventive concepts that would result in patent eligibility)? Second, are there issues of claim construction that must be decided before resolving the motion? Finally, is there *any* set of facts that could be proven relating to preemption, questions of patentability, or whether the claims "solve a technological problem," that would result in a determination that one or more of the claims are patent-eligible?

*Cronos Techs., LLC v. Expedia, Inc.*, No. CV 13-1538-LPS, Nos. 13-1538-LPS, 13-1541-LPS, 13-1544-LPS, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015) (footnotes omitted).   And, while patent eligibility may be determined at the pleading stage, motions to dismiss must be denied where issues of claim construction or factual analysis must be resolved.   *Execware, LLC v. v. BJ's Wholesale Club, Inc.*, C.A. No. Nos. 14-233-LPS, 14-234-LPS, 14-235-LPS, 14-240-LPS, 2015 WL 5734434, at *2-3 (D. Del. Sept. 30, 2015) (denying motion without prejudice to renew); *Aatrix*, 882 F.3d at 1126-27 (reversing grant of 12(b)(6) motion where facts were alleged that affected the patentable subject matter analysis).

V.      **ARGUMENT**

   A.      **Spotify's Section 101 Motion Should Be Denied**

      1.      **Spotify's Section 101 Motion Is Premature At Best**

Spotify's motion should be denied because it glosses over several issues which must be resolved *before* the Court can address its Section 101 arguments.  First, Spotify fails to show that claim 1 is a representative claim.  While, as explained below, all of the '539 patent's claims are directed to patentable subject matter, many of the claims at issue (e.g., claims 6-8 and 15-24) require audio playback ("audible music signals," "playing back … selections," or "playback methods").  These transformations in the physical realm further support patent eligibility for these specific claims.  *See SAP America, Inc., v. InvestPic, LLC*, No. 2017-2081, 2018 WL 2207254, at *4 (Fed. Cir. May 15, 2018) (*citing McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299).  Accordingly, claim 1 is not representative and Spotify has failed to meet its burden on this issue for every asserted claim. *See Ultramercial* and *JSDQ Mesh Techs, supra*.

Second, Spotify fails even to argue, let alone meet its burden to demonstrate, that there are no issues of claim construction present. As stated above, the claims of the '539 patent, including eight terms, were construed in earlier litigation.  *See MOAEC, Inc. v. Pandora Media, Inc. et al*., No. 07-cv-654, 2008 WL 4500704 (W.D. Wis. Sept. 30, 2008).  While Spotify asserts that claim construction is not necessary to resolve patentability *if* no reasonable construction could alter the analysis (*see* D.I. 14 at 8), Spotify fails to identify what, if any, constructions of the '539 patent it seeks to apply.  In particular, Spotify is silent on how it seeks to interpret the very same terms of the very same patent construed by the Western District of Wisconsin in *Pandora* – terms that the *Pandora* court found necessary to interpret to determine the patent's scope.  For example, the construction of "category flag" by the Western District of Wisconsin court specifically rejected Spotify's position here that category flags (such as the "ownership

category flag") are mere yes/no indicators or conventional database identifiers (see D.I. 14 at 3-4):

> Defendants contend that because both category flags and database identifiers are associated with each song, category flags must be database identifiers. Defendants are incorrect. At most, the association of both terms with songs is a tenuous connection between the separate terms. Without a clear indication that the inventors intended to limit the term, such a connection does not support a construction of category flags that limits the term to database identifiers.

*MOAEC, Inc. v. Pandora, Inc. et al.*, No. 07-cv-654, 2008 WL 4500704, at *5 (W.D. Wis. Sept. 30, 2008). Such a construction, if adopted by the Court, would necessarily pass *Alice* step one, by moving the claims out of the realm of mere database manipulation – requiring the denial of Spotify's motion, or perhaps, a denial pending claim construction. *See Execware, LLC v. BJ's Wholesale Club, Inc.*, 2015 WL 5734434 (D. Del. Sept. 30, 2015).

Finally, Spotify does not argue that there are no facts that Plaintiff can prove to demonstrate patentability. "[T]he Federal Circuit has encouraged District Courts to evaluate considerations analogous to those of §§ 102 and 103 as part of a pragmatic analysis of § 101 at the motion to dismiss stage." *Execware*, 2015 WL 5734434, at *3 (*citing Internet Patents Corp. v. Active Network Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). As detailed below (*see* Section V.A.3.), numerous factual issues exist regarding whether the patent's elements or ordered combination of elements in the claims are "well-known, conventional or routine." *Alice*, 134 S. Ct. at 2359. In addition, the Patent Office examined the relevant claims just two years ago and found them, as amended, both novel and nonobvious. Among other things, the Examiner expressly found that an ownership category flag – an element of every asserted claim here – was a structure found nowhere in the prior art. Exh. 1, Notice of Intent to Issue a Reexamination Certificate at 2.

For these reasons alone, Spotify's Section 101 motion should be denied.

### 2.    The '539 Patent Claims Are Patent-Eligible Under *Alice* Step One

Should the Court decide to reach the merits of Spotify's motion, an analysis of the patent claims, the specification and the file history make clear that the '539 patent is directed to a patent-eligible concept under *Alice* step one.  Spotify asserts that the patent is merely directed to a "graphical user interface with buttons for categories" (*see* Spotify USA Inc.'s Opening Brief in Support of Motion to Dismiss, D.I. 14 at 1, 2, 3) or alternatively "accessing music by categories" (*id.* at 10).  Both of these intentionally simplistic characterizations are wrong.

First, only a single one of the six limitations in the patent's independent claims 1 and 15 are directed to a "graphical user interface."  Spotify itself acknowledges as much, albeit only later in its brief.  *Id.* at 4.  In fact, the '539 patent is directed to a physical product – the "music organizer and entertainment center" of the patent's title – as well as playback methods.  Instead of merely claiming "accessing music by category," or "abstractly cover[ing] results where it matters not by what process or machinery the result is accomplished," *McRO*, 837 F.3d at 1314, the patent's music organizer and entertainment center is a specific hardware device with specific components – a storage device with a specific data structure, a processor, a data decompressor, and music selections that specifically must have an ownership category flag according to the limitations of each of the claims.  *See* '539 patent, 4:35-6:9 and '539 patent Ex Parte Reexamination Certificate, cols. 1-2; *see also Aatrix Software*, 882 F.3d at 1125 (finding that a data processing system which clearly requires software and "means for viewing" is "very much a tangible system").

Spotify also mischaracterizes the problem the patent solves.  The patent is not, as Spotify claims, directed to the abstract idea of accessing music by category.  (D.I. 14 at 10.)  While the '539 patent uses a database of songs to organize the digitized music available to a user, the step-one inquiry does not "simply ask whether the claims involve a patent-eligible concept, because

9

essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon – after all, they take place in the physical world." *Enfish*, 822 F.3d at 1335.  Nor do the claims "simply instruct [] the practitioner to implement the abstract idea on a generic computer."  *Alice*, 134 S. Ct. at 2351.  Rather, the patent's claims are directed to a problem unique to digitized music: the ability to control the manner in which music can be accessed, based in part on the use of flags, including an ownership category flag, essential to addressing the very real and important issues of copyright infringement and unauthorized use. As the patent notes, an individual with access to a digitized music database may have access to hundreds of thousands of titles.  ('539 patent, 14:2-4.)  Before the patented invention, a playback system did not enable multiple people to simultaneously access music, yet only permit some of them to play the music.  The patent at issue here solved that problem – a problem that only exists with digitized data.

Spotify invokes a number of inapposite cases.  In *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332 (Fed. Cir. 2017), the claims of the asserted patent were directed to a system for editing and translating two otherwise incompatible XML documents. Because the patent's concept was related solely to "the collection, display and manipulation of data" the Federal Circuit found the claims to be abstract and to fail *Alice* step one.  In *Electric Power Group v. Alstom S.A.* , the claims were explicitly directed to "a method of detecting events on an interconnected electric power grid."  830 F.3d 1350, 1351 (Fed. Cir. 2016).  Those claims were held unpatentable because they were directed solely to "collecting information," "analyzing information by steps people go through in their minds," and "presenting the results of abstract processes of collecting and analyzing information."  *Id.* at 1353-54.  And *FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089 (Fed. Cir. 2016) considered claims directed to "a

method of detecting fraud and/or misuse in a computer environment based on analyzing data." *Id.* at 1093. Unlike the patents at issue in these cases, the invention here is ***not*** solely directed to the collection, analysis and display of data; it is directed to the concrete problem of controlling the manner in which music can be accessed (by selectively permitting access to one or more music files based on the use of ownership category flags).

The claims at issue here are similar to those found patentable at *Alice* step one in *SCVNGR, Inc. v. DailyGobble. Inc.*, 238 F. Supp. 3d 263 (D.R.I. 2017). Like claim 1 of the plaintiff's '539 patent, claim 11 of the patent at issue in *SCVNGR* claimed a terminal for processing transactions at the point of sale. The court rejected defendant's argument that the claims were directed to nothing more than recognizing and processing transaction data. *Id.* at 268. Instead, the court found that the claims "improve upon the functionality of payment processing [and] are directed towards a specific method and POS terminal that differentiates among multiple data inputs through the use of sentinels and interrupts a current task being performed by the POS terminal." *Id.*

Similarly, in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the claims at issue were directed to a self-referential database that functioned differently than a standard database and provided increased flexibility, faster search times, and smaller memory requirements. *Id.* at 1337. The Federal Circuit rejected the district court's conclusion that the claims were directed to "storing, organizing and retrieving memory in a logical table" or the "concept of organizing information using tabular formats," *id.*, and recognized that the claimed database was an improvement on prior art systems:

> Describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule. Here the claims are not simply directed to ***any*** form of storing tabular data, but instead are specifically directed to a ***self-referential*** table for a computer

> database…. In finding that the claims were directed simply to "the concept of organizing information using tabular formats," the district court oversimplified the self-referential component of the claims and downplayed the invention's benefits.

*Enfish*, 822 F.3d at 1337-38 (citations omitted).  As with *Enfish*, Spotify's attempt to denigrate and "dumb down" the claims as mere manipulation and display of data on a graphical user interface ignores that the invention is ***not*** directed merely to data manipulation but also to the control and playback of that data based on the ownership category flag.

Spotify's Section 101 motion should, therefore, also be denied because the claimed invention is patent-eligible under *Alice* step one.

### 3. The '539 Patent Claims Are Patent-Eligible Under *Alice* Step Two

Because the claims are patent eligible under step one of the *Alice* test, the Court need not proceed to step two.  *Enfish*, 822 F.3d at 1339.  However, the claims that Spotify infringes also pass *Alice* step two.

The '539 patent "recite(s) an invention that is not merely the routine or conventional use of electronic devices for music playback."  (D.I. 1., ¶ 15.)  It offers instead an "improved method to deliver content," "adds new features to deliver content, integrate application interfaces and other protocols on shared networks," and "stor[es] music information in association with a set of predetermined flags, including an ownership category flag and permitting user-customizable playback of music, based in part on the flags."  *Id.*, ¶¶ 14-15.  In evaluating Spotify's motion, these statements from the patent's specification must be accepted as true.[2]  *See, e.g., Aatrix*

---

[2] MOAEC can and will demonstrate at trial that, as of the '539 patent's filing date in 1998, the ordered combination of elements claimed therein, including the use of digital music files containing an ownership category flag and the ability to transfer said digital music data over a network interface, was not conventional or well-understood.  ('539 patent, 1:49-59.)  If the Court concludes that MOAEC's complaint does not already allege facts sufficient to permit the Court to infer that the ownership category flag element, or the ordered combination of claimed

*Software*, 882 F.3d at 1125; *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016) (Stark, J.) (rejecting Rule 12 motion arguing elements combined in same manner as prior art).  It would not remotely end the analysis required by *Alice* step two even if many of the '539 patent elements were familiar in 1998 (an issue that itself is a question of fact).  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1052 (Fed. Cir. 2016) ("[P]atent eligibility does not turn on ease of execution or obviousness of application.  Those are questions that are examined under separate provisions of the Patent Act" (*citing Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012)).

The invention in this case, and Spotify's arguments that the '539 patent fails *Alice* step two, are similar to those in *BASCOM Global Internet Svcs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016), a case Spotify fails to reckon with in its brief.  In *BASCOM*, the patent was directed to the problem of filtering websites at a site remote to the location of the user, while permitting customization of the filter settings by a user or system administrator by associating an individual user with a specific request to access a website.  *Id*. at 1343-45.  While deferring consideration of the district court's opinion that the patent was directed to the abstract idea of "filtering content," *id*. at 1346-47, the Federal Circuit found that the asserted claims were nevertheless patentable under *Alice* step two:

> We agree with the district court that the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself….  However, we disagree with the district court's analysis of the ordered combination of limitations.  In light of *Mayo* and *Alice*, it is of course now standard for a § 101 inquiry to consider whether the various claim elements simply recite "well-understood, routine and conventional activities."  The district court's analysis in this case, however, looks similar to an obviousness analysis under § 103, except lacking an explanation of a reason to combine the limitations as claimed.  The inventive concept inquiry requires more

---

elements was not conventional, routine or well-understood, MOAEC requests leave to amend its Complaint. *Aatrix*, 882 F.3d at 1126-27.

> than recognizing that each claim element, by itself, was known in the art.  As is
> the case here, an inventive concept can be found in the non-conventional and non-
> generic arrangement of known, conventional pieces.

*BASCOM*, 827 F.3d at 1349-50.

Spotify spends much of its step two analysis arguing that the individual pieces of the

music organizer and entertainment center were previously known.  *See generally* D.I. 14 at 13-14

(stating that many of the pieces of the center are "commercially available").  The transfer and

control of music was a known concept in 1998; however, the use of the particular pieces of the

music organizer and entertainment center to allow a user to have access to only the music in a

library of which he has ownership instead of merely access *was not*.  To the extent Spotify

disagrees, it has identified a question of fact requiring denial of its motion to dismiss.

*Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir.

2014), is inapposite.  Unlike the claims at issue there, where even the patentee conceded that the

manner in which the various elements were used was well-known, the claims here place the

individual pieces of the center together in a unique manner – a manner that allows access to

specific digital music files to be controlled individually.

As in *BASCOM*, the claims Spotify infringes are "more than a drafting effort designed to

monopolize the [abstract idea]."  *BASCOM*, 827 F.3d at 1350-51 (*quoting Alice*, 134 S. Ct. at

2357).  As such, "construed in favor of [Plaintiff] as they must be in this procedural posture," *id*.

at 1352, the '539 patent is eligible under *Alice* step two as well.

### B. Plaintiff's Complaint Is Sufficient Under *Iqbal/Twombly*

#### 1. The Complaint Sufficiently Connects The Patent's Limitations To Accused Products

The Complaint as filed pleads facts sufficient to put Spotify on notice as to which products infringe (*see e.g.*, D.I. 1, ¶ 19), and how they do so (*see e.g.,* D.I. 1 at ¶¶ 21, 25, 29). Neither *Twombly* nor *Iqbal* requires more.

Plaintiff's Complaint clearly lists the "Accused Instrumentalities" that it contends infringe the '539 Patent.  This alone puts Spotify on notice of at least some of the currently known infringing products. (D.I. 1, ¶ 19.) The Complaint goes on to detail each claim Spotify infringes and describes how Spotify's own materials tout the same functionality, connecting each limitation to the infringing function that reads on to the limitation. (*Id*., ¶¶ 20-37.) Further, the Complaint's explanation of the device described in the patent (*id*., ¶¶ 14-16, 18) puts the allegations in sufficient context that "when considered in their entirety … lead to the common sense conclusion" that the Accused Instrumentalities infringe the '539 Patent.  *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 (Fed. Cir. 2012) (citation and quotation omitted).

As the Federal Circuit has made clear, "[t]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common-sense conclusion that" a patent is being infringed. *Id*. at 1342.  At this stage, "a plaintiff is only required to plead enough facts to enable a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation and quotation omitted).  A patent plaintiff is not required to "prove its case at the pleading stage," *id.*, yet that is what Spotify's motion effectively demands.

15

This Court will set proper deadlines for a claim chart and infringement claims.  *See Revised Patent Form Scheduling Order*, *available at* http://www.ded.uscourts.gov/sites/default/files/Chambers/LPS/PatentProcs/LPS-PatentSchedOrder-Non-ANDA.pdf.  The additional details Spotify seeks are accounted for and will be addressed in the Court's schedule.[3]  Where, as here, those scheduling rules were promulgated post-*Iqbal*/*Twombly*, this delay is "consistent with the Federal Rules of Civil Procedure's and the court's concern that a complaint 'give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *IP Comm'n Sol'ns, LLC v. Viber Media (USA) Inc.*, No. 16-134-GMS, 2017 WL 1312942, at *2 (D. Del. Apr. 5, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009)).

Spotify misreads and draws flawed conclusions from the order given in *Int'l Lic. Exchange of America, LLC v. ViaSat, Inc.* ("*ILEA*"), C.A. No. 16-720-RGA (D. Del. May 19, 2017).  Neither Spotify nor the *ILEA* Court explain how the enunciated requirements derive from *Iqbal* or *Twombly*, or are in any way grounded in Third Circuit law. Indeed, while Spotify describes the citation as a "slip op.," it actually cites an oral docket entry containing no analysis.  *Id*., Oral Order, D.I. 15. Further, the Complaint at issue here provides substantially more information and detail than that in *ILEA*.  For example, the *ILEA* complaint did not "reference any of the specific limitations of the asserted [patent], let alone attempt to link those requirements to the Accused Instrumentalities." *Id.*, Motion to Dismiss, D.I. 8 at 8 (D. Del., Mar. 7, 2017).

---

[3] MOAEC notes that the Court has ordered the parties to meet and confer on a schedule covering these issues and to submit a letter no later than June 15, 2018, one week after Spotify's reply brief is due.  *See* Oral Order dated May 15, 2018.

*SIPCO, LLC v. Streeline, Inc.*, 230 F. Supp. 3d 351 (D. Del. 2017), also cited by Spotify, is simply inapposite. The *SIPCO* complaint merely alleged patent ownership and identified some products that defendant sold – all without discussing the patent claims or which functions of the accused products infringed. *Id.* at 351-53.  Here, the Complaint alleges specific products that infringe (D.I. 1, ¶19), the specific limitations and functions infringed (*id.*, ¶¶ 14-16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36), and Defendants' own touting of functionality that reads onto specific claims (*id.*, ¶¶ 14-16, 18, 21, 23, 25, 27, 29, 31, 33, 35, 37).

"Our precedent requires that a complaint place the alleged infringer 'on notice of what activity … is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).  The Plaintiff's Complaint has done so.

### 2.     The Complaint Sufficiently Pleads Willfulness

As with the allegations of direct infringement, Spotify demands more detail regarding willfulness than either the Federal Rules or governing precedent require.  While the Supreme Court articulated the standard for enhanced damages for willful infringement in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931-36 (2016), it did not set out a *pleading* standard.  *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885 (JPO), 2017 WL 74729, at *5-6 (S.D.N.Y. Jan. 4, 2017) ("[*Halo*'s] effect on the pleading standard for willful infringement remains unclear").

*Bobcar* held that a Complaint that pleaded defendant's knowledge of the patent-in-suit and alleged infringement, coupled with continuing the infringing activities, provided sufficient notice of the subjective willfulness required under *Halo*.  *Id.* at *6.  Plaintiff pleads similarly here:  While notice of both the patent and alleged infringement was given to Defendants at the

latest on October 19, 2016 (D.I. 1, ¶ 38), Spotify has nevertheless continued to practice the patent. (*Id*., ¶ 39.)

Defendant's cases are inapposite. *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772 (D. Del. Jul. 12, 2016), dismissed the willfulness claim because "Plaintiff did not adequately plead any underlying act of direct infringement" *at all*, much less an egregious act. *Id.* at *3. *Varian* does not and cannot support the proposition that egregiousness must be pleaded; it holds only that a plaintiff must successfully plead actual infringement, which Plaintiff has done here. *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018), is irrelevant.  It addressed summary judgment and deals with the quantum of proof required *after discovery*, not at the pleading stage. *Id.* at *1, 6-8. *Continental Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709 (D. Ariz., June 19, 2017), actually undermines Defendants' assertions as to the pleading standard. While it expressly held that the complaint before it did not sufficiently plead willfulness, the court invoked other opinions finding pleading mere knowledge and continued practice to suffice. *Id*., at *8.  Finally, in *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal., June 7, 2017), the court found that the plaintiff had failed to allege the subjective intent required to find willfulness under *Halo*.  *Finjan*, 2017 WL 2462423, at *5.[4] Here, however, plaintiff has pleaded subjective intent. (D.I. 1, ¶¶ 39-42.)

### 3.     The Complaint Sufficiently Pleads Induced Infringement

The same Complaint allegations as to notice and knowledge that adequately allege willfulness also suffice to plead induced infringement.  The same knowledge and continued marketing inducements, along with indicative examples of the marketing materials, also show a

---

[4] The court also found that Finjan failed to allege knowledge *at all*, *Finjan*, 2017 WL 2462423, at *5, which is clearly not the case here (D.I. 1, ¶¶ 38-39).

specific intent to induce infringing the use of the Accused Instrumentalities. (D.I. 1, ¶¶ 38-41.)

*See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (holding that induced infringement requires knowledge that the induced acts constitute infringement); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475-76 (D. Del. 2012) (knowledge of patent and alleged infringement combined with "activities relating to the marketing and distribution" of allegedly infringing devices sufficient to survive a motion to dismiss); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (allegations of marketing and distribution sufficient to claim induced infringement).

### 4. The Complaint Sufficiently Pleads Contributory Infringement

Finally, Defendant's insistence that Plaintiff's allegations of contributory infringement are mere recitations of the legal elements is mistaken. The Complaint pleads infringing use of the Accused Instrumentalities (D.I. 1, ¶¶ 19-37, 39-42), with no non-infringing use. (*Id.*, ¶ 42.) That suffices at the pleading stage. *In re Bill of Lading*, 681 F.3d at 1342-43. As argued *supra*, the Complaint pleads that Spotify knew that the Accused Instrumentalities were both patented and infringing, as of October 19, 2016, at the latest. (D.I. 1, ¶¶ 38-39.) The Complaint goes a step further and pleads the specific mechanism through which contributory infringement occurs, namely teaching app integration, despite knowledge of the patent and its infringement. (*Id.*, ¶ 42.) Far from a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 566 U.S. at 679, the Complaint's allegations affirmatively put Spotify on notice of how the alleged contributory infringement occurs.

Plaintiff has pleaded what *In re Bill of Lading* requires, namely "that Plaintiff 'affirmatively plead no substantial non-infringing uses ....'" *DRG-Int'l, Inc. v. Bachem Americas, Inc.*, No. CV-15-7276-MWF (SSx), 2016 WL 3460791, at *9 (C.D. Cal., Jan. 5, 2016) (citation omitted in original). Demanding more exceeds what is required under the law.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Spotify's motion be denied.


Dated: May 24, 2018

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (301) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Leonard A. Gail (admitted *pro hac vice*)
Kenneth M. Goldman (admitted *pro hac vice*)
**Massey & Gail LLP**
50 East Washington Street, Suite 400
Chicago, IL 60602
Telephone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com
kgoldman@masseygail.com

Christopher L. May (admitted *pro hac vice*)
Jeremy G. Mallory (admitted *pro hac vice*)
**Massey & Gail LLP**
1325 G Street N.W., Suite 500
Washington, DC 20005
Telephone: (312) 283-1590
Fax: (312) 379-0467
cmay@masseygail.com
jmallory@masseygail.com

*Attorneys for Plaintiff*